IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

NO. 2:07-CV-15-H

JAMES L. HALL,

    Plaintiff,

v.                                                   **ORDER**

LYNDO TIPPETT, SECRETARY OF
THE NORTH CAROLINA DEPARTMENT
OF TRANSPORTATION,

    Defendant.

    This matter is before the court on defendant's motion for summary judgment [DE #34], plaintiff's motion to extend discovery deadline [DE #44] and plaintiff's motion to amend his complaint [DE #49]. Responses have been filed to defendant's motion for summary judgment and plaintiff's motion to extend, and the time for further filings has expired. This matter is ripe for adjudication.

**STATEMENT OF THE CASE**

On December 12, 2006, plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that he had been discriminated against in his employment with the North Carolina Department of Transportation ("DOT") because of his age and in retaliation for prior protected activity. The EEOC issued plaintiff a Notice of Right to Sue on February 6, 2007.

On May 8, 2007, plaintiff filed this action pursuant to the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. ("Title VII")[1] and the Age Discrimination in Employment Act, 29 U.S.C. § 633 et seq. ("ADEA"). On August 10, 2007, the court entered a scheduling order giving plaintiff until October 15, 2007, to amend his complaint and requiring that all discovery be commenced in time to be completed by February 11, 2008. Plaintiff's attorney, Ralph T. Bryant, Jr., was subsequently disbarred by the North Carolina State Bar, see N.C. State Bar v. Ralph T. Bryant, No. 07DHC26 (N.C. State Bar Disc. Hrg. Comm'n Nov. 1, 2007) (order of disbarment), and by this court, (see

---

[1] Plaintiff's reference to Title VII appears to be for the purpose of delineating the standards and procedures applicable to his claim since Title VII does not proscribe the type of discrimination alleged by plaintiff (i.e., age discrimination and retaliation for filing a prior age discrimination claim).

2

Order dated Nov. 16, 2007 [DE #16] (referencing this court's Nov. 9, 2007, disbarment of Bryant)).

Following the disbarment of plaintiff's counsel, the court granted a number of extensions of time for purposes of discovery and twice amended the court's scheduling order in order to allow plaintiff time to obtain new counsel.[2]

Defendant filed his motion for summary judgment on June 9, 2008, and plaintiff subsequently filed motions to extend the discovery deadline and to amend his complaint.

## STATEMENT OF THE FACTS

Plaintiff James Hall was hired by DOT in September 1968 as an Engineer Aide. Over the years, plaintiff was employed in a number of different positions throughout DOT. In 1997, plaintiff filed an action against DOT alleging that he had been denied a promotion because of his age. Following an

---

[2]The court first amended its scheduling order on February 6, 2008, ordering that discovery be commenced in time to be completed by April 14, 2008, and that all potentially dispositive motions be filed on or before May 12, 2008. The court again amended its scheduling order on March 11, 2008, granting plaintiff until April 24, 2008, to respond to defendant's discovery requests, requiring that discovery be commenced in time to be completed by May 22, 2008, and ordering that all potentially dispositive motions be filed by June 9, 2008. (See Order dated March 11, 2008 [DE #29].) Ultimately, plaintiff was granted until May 8, 2008, to respond to defendant's discovery requests. (See Order dated April 24, 2008 [DE #33].)

administrative hearing, DOT was ordered to promote plaintiff to a Transportation Technician IV position and to pay plaintiff back wages and attorney's fees. In compliance with that order, plaintiff was transferred in August 1999 to the Materials and Test Unit as a Technician IV and received a twenty-percent pay increase.

The Materials and Tests Unit is responsible for quality assurance and testing of all materials placed on North Carolina roadway systems and structures and is comprised of a main office in Raleigh and five remote laboratories and ten field offices that serve fourteen divisions across the state. The ten field offices are headed by nine Section Materials Specialists. Following his transfer to the Materials and Tests Unit, plaintiff reported to Section Material Specialist William Watson at the Williamston office.

In July 2006, DOT posted a vacancy announcement for a Section Materials Specialist for Divisions 1 (Williamston office) and 4 (Wilson office). The work description indicated that the successful applicant would be responsible for administrative and technical supervision of three materials inspectors and two concrete technicians, prioritizing and scheduling work assignments and giving technical advice

concerning concrete, aggregates, metal pipe, concrete pipe, guardrails and other materials.

Five individuals applied for the position, including: plaintiff, who was fifty-nine years old at the time; Charles Baines, a fifty-three-year-old Section Concrete Technician and Acting Section Materials Specialist for Division 4 (Wilson office); and three other candidates. All but one of the applicants were rated "qualified" by Human Resources, and all of the qualified candidates had promotional priority status for the position.

As Field Operations Engineer, Samuel J. Frederick supervised the nine Section Materials Specialists. After interviewing the four qualified candidates and evaluating their backgrounds and qualifications, Frederick chose Baines to fill the Section Materials Specialist position. Frederick called plaintiff to inform him that he had not been selected for the position and invited plaintiff to meet if he would like to discuss the matter. Plaintiff did meet with Frederick and at that time informed Frederick that he had "sent several email messages to the WRAL television station" concerning his "knowledge and possession of information about NCDOT wrong doings." (Plf.'s Aff. ¶ 4 [DE #45].) He also asked Frederick

how to go about filing a grievance about his non-selection for the Section Materials Specialist position. (Id.)

In or around January 2007, a new field office was created in Greensboro to serve Division 7. As a result of the creation of the Greensboro office, eight Transportation Technicians were transferred to fill vacancies in other divisions. On December 6, 2006, plaintiff was notified that he was being transferred from Division 1 (Williamston office) to Division 4 (Wilson office), where he would be under the supervision of Baines. Plaintiff contacted the Governor's Office and DOT's Department of Human Resources to protest the transfer.

On January 4, 2007, plaintiff accompanied Baines on an inspection of Rinker Materials Pipe Facility in Wilson, one of DOT's materials producers. According to Rinker's Production Manager, plaintiff acted inappropriately and unprofessionally and expressed a lack of interest in the quality control process that was being was conducted. When Rinker's office administrator greeted Baines and plaintiff by asking "How are you?" plaintiff responded "Not worth a damn, I don't want to be here. Those sons of bitches in Raleigh want to keep messing with me." (Letter from Rinkers dated Jan. 18, 2007 [DE #34-11].) Baines informed plaintiff that his conduct was inappropriate and asked him to keep his personal feelings to

6

himself. (Jan. 19, 2007 Written Warning [DE #34-12].) Baines and plaintiff then met with Rinker's production manager. When asked how he was doing, plaintiff responded "Not worth a f***! Those sons of bitches in Raleigh keep f****** with me because I filed a grievance against [Baines'] job." (Id.)

After returning to the Wilson office, Baines attempted to counsel plaintiff concerning his behavior. Plaintiff again began using profane language and told Baines "You don't know how f****** mad I am!" (Id.)

## COURT'S DISCUSSION

I. **Summary Judgment Standard of Review**

Summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for

7

trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. Faircloth v. United States, 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249.

In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. The evidence must also be such that a reasonable jury could return a verdict for the non-moving party. Id. at 248. Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion. Faircloth, 837 F. Supp. at 125.

## II. Burdens of Proof

An employer charged with discrimination is entitled to summary judgment if the plaintiff fails to establish a prima facie case or fails to raise a factual dispute regarding the

8

reasons the employer proffers for the alleged discriminatory act. See Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995). "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." E.E.O.C. v. Clay Printing Co., 955 F.2d 936, 944 (4th Cir. 1992).

An ADEA violation, like a Title VII violation, may be proved by either of two methods. Ilozor v. Hampton University, 286 Fed. App'x 834, 839 (4th Cir. 2008). "First, an employee may utilize 'ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue.'" Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (quoting Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992)). "What is required . . . is evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Fuller v. Phipps, 64 F.3d 1137, 1142 (4th Cir. 1995), abrogated by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

In the absence of such evidence, a plaintiff may alternatively resort to the burden-shifting proof scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-805 (1973).

Under McDonnell Douglas, a plaintiff faced with a motion for summary judgment must first establish a prima facie case of unfair treatment by a preponderance of the evidence. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); Henson, 61 F.3d at 274. A prima facie case requires plaintiff to prove facts from which a nexus can be inferred between the alleged adverse action and the plaintiff's protected status or conduct. Holder v. City of Raleigh, 867 F.2d 823, 826 (4th Cir. 1989). If the plaintiff establishes a prima facie case, then a presumption of discrimination arises. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).

Once a prima facie case is established, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. See McDonnell Douglas, 411 U.S. at 802. The employer's burden is one of production, not of persuasion. See Henson, 61 F.3d at 274-75. Therefore, the employer is not required to prove the absence of discriminatory motive. Id. If the employer meets its burden, the presumption of discrimination "drops from the case," and the plaintiff then bears the ultimate burden of proving that the defendant's explanations are merely pretext and that the defendant's actions were, in fact, discriminatory. Burdine, 450 U.S. at 254-56. It is not enough for the plaintiff to merely

prove the falsity of the employer's explanations; the plaintiff must also prove intentional discrimination. <u>Reeves v. Sanderson Plumbing Products</u>, 530 U.S. 133, 147 (2000). However, it is permissible to infer the ultimate fact of discrimination from the falsity of the employer's explanation. <u>Id.</u>

### III. Age Discrimination Claim

Plaintiff first claims that DOT violated the ADEA in denying his application for promotion to Section Materials Specialist for Divisions 1 and 4. The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Having failed to present direct evidence of a discriminatory animus on defendant's part, plaintiff must resort to the familiar <u>McDonnell Douglas</u> burden-shifting framework. Under this framework, a plaintiff alleging a claim of age discrimination must first establish a <u>prima facie</u> case of discrimination.

To establish a <u>prima facie</u> case of age discrimination for denial of promotion, plaintiff must show that:

> (1) he was a member of a protected class, <u>i.e</u>, that he was at least 40 years old; (2) his employer had an open position for which he applied and was qualified; (3) he was rejected despite his qualifications; and (4) the position remained open or was filled by a

similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA.

Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006).

Plaintiff has not made out a prima facie case of age discrimination. There appears to be no question that plaintiff has shown the first three elements of the prima facie case -- that he was at least 40 years old, that plaintiff was qualified for the vacant Section Materials Specialist position, and that he did not receive the promotion despite his qualifications. However, plaintiff fails as to the fourth element.

As to the fourth element, plaintiff need not prove that the position was filled by someone outside his protected class. O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996). However, he must demonstrate that the successful applicant was "substantially younger" than plaintiff. Id. at 312-13 (holding that "an inference [of discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger"). This he is unable to do. At the time plaintiff applied for the Section Materials Specialist position, he was 59 years old and Baines, the successful applicant, was 53. Other than the six-year age difference, there is no evidence to suggest that age was a factor in the promotion decision. Standing alone, an age difference of six

12

years is simply not enough to establish that the position was filled by a substantially younger individual. See Cramer v. Intelidata Tech. Corp., No. 97-2775, 1998 WL 911735 at *3 (4th Cir. Dec. 31, 1998) (unpublished) (prima facie case not established where individual was only five years younger than plaintiff).

Moreover, even if plaintiff had established a prima facie case of age discrimination, his claim would fail. Baines' experience, qualifications and exemplary performance evaluations provide a legitimate, nondiscriminatory reason that Baines, and not plaintiff, was promoted to the Section Materials Specialist position. Plaintiff offers no evidence to demonstrate that defendant's legitimate explanation is pretextual.

### IV. Retaliation Claim

Plaintiff also claims that he was not promoted to the Section Materials Specialist position in retaliation for his prior discrimination claim against DOT. The ADEA makes it unlawful "for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act." 29 U.S.C. § 623(d). To establish a prima facie case of

retaliation under the ADEA, a plaintiff must demonstrate: (1) that he engaged in protected activity; (2) that an adverse employment action was taken against him; and (3) a causal link between the protected activity and the adverse action. Id. If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's actions. If the employer does so, the plaintiff can prevail on the retaliation claim only if he is able to show that the reason given is mere pretext -- that the employer's reason is false and that retaliation was the real reason for the adverse action against him. Id.

There appears to be no dispute that plaintiff has satisfied his burden as to the first two elements required for demonstrating a prima facie case of retaliation under the ADEA. His 1997 filing of an age discrimination claim against DOT was protected activity, and his non-selection for the Section Materials Specialist position constitutes adverse action under the ADEA's anti-retaliation provision.

However, plaintiff has not made a sufficient showing of a causal connection to withstand summary judgment. "'[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action

14

against an employee shortly after learning of the protected activity.'" Pascual v. Lowe's Home Ctrs., Inc., 193 Fed. App'x 229, 233 (4th Cir. 2006) (quoting Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004)). "Generally speaking, however, the passage of time alone cannot provide proof of causation unless the 'temporal proximity between an employer's knowledge of protected activity and an adverse employment action' was 'very close.'" Id. (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam)).

Plaintiff's prior age discrimination claim was filed in September 1997 when he worked in a different unit of DOT and answered to different supervisors and managers. That claim was resolved in June 1999, more than seven years before plaintiff applied for the Section Materials Specialist position at issue here. The temporal proximity between these events is simply too attenuated to provide evidence of causation as required to establish a prima facie case of retaliation. See Pascual, 193 Fed App'x at 233 (three to four month separation "too long to establish a causal connection by temporal proximity alone"); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998). Because plaintiff has presented no other evidence of a causal link between his prior claim against DOT and his non-selection, he has failed to establish a prima facie case of retaliation.

15

Assuming, arguendo, that plaintiff had carried his burden of establishing a prima facie case, defendant would nevertheless be entitled to summary judgment. Defendant has articulated a legitimate, non-discriminatory reason for plaintiff's non-selection. Plaintiff has not presented any evidence to suggest that the proffered reason is pretextual and that the adverse action was, in fact, taken in retaliation for plaintiff's prior protected activity. Consequently, defendant is entitled to judgment as a matter of law as to plaintiff's retaliation claim.

## V. Plaintiff's Motions

### A. Motion to Amend

On October 27, 2008, plaintiff filed a "Motion to Ammend [sic] Charges to Include Whistleblowing & First Amendment Rights." Although the specifics of plaintiff's claims are unclear, plaintiff states that he is "in possession of pictoral [sic] an [sic] written documentation . . . of two separate events . . . [of] wrong doing on the part of [DOT] with regards to the enforcement of [DOT} specification[s] for roadways an [sic] structures" and misuse of taxpayer funds. (Mot. Amend at 1-2 [DE #49].) Plaintiff further states that he intended to raise these claims in his EEOC charge of discrimination but did not do so because of information provided by the EEOC. (Id. at 1.)

16

Whether to grant leave to amend a complaint is within the court's discretion. Pittson Co. v. United States, 199 F.3d 694, 705 (4th Cir. 1999). Rule 15(a) provides that leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Ordinarily, "[l]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999).

However, because the time has expired for the parties to amend their pleadings, plaintiff must first show good cause to amend the scheduling order pursuant to Rule 16(b). See Waldron v. Interactive Bus. Sys., Inc., No. 5:98-CV-526-BR, 1999 WL 33455148, at *2 (E.D.N.C. Oct. 4, 1999) (unpublished). "'Good cause' under Rule 16(b) exists when evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline had passed." Interstate Narrow Fabrics, Inc. v. Century USA, Inc., 218 F.R.D. 455, 460 (M.D.N.C. 2003) (quotation omitted). The focus is "on the timeliness of the amendment and the reasons for its tardy submission." Rassoull v. Maximus, Inc., 209 F.R.D. 372, 374 (D. Md. 2002).

17

Plaintiff has not shown good cause for amending the complaint in this action. The original scheduling order in this case gave the parties until October 15, 2007, to amend their pleadings or join additional parties. The court subsequently amended the scheduling order a number of times, granting the parties additional time to complete discovery and file dispositive motions. However, neither plaintiff nor defendant ever requested that the amendment deadline be extended beyond October 15, 2007. Plaintiff's own motion establishes that the claims are not based on newly discovered evidence, but upon facts of which plaintiff has been aware at least since the filing of his charge of discrimination almost two years ago. Nevertheless, plaintiff waited over a year after the amendment deadline passed and has offered no reason to justify the belated motion. Because plaintiff failed to act diligently in seeking to amend his complaint, the court determines that plaintiff's motion to amend should be denied.

### B. Motion to Extend Discovery

Plaintiff has also moved to extend the deadline for discovery "[i]n the event the Court were to deny Defendant's Motion for Summary Judgment." (Plf.'s Mot. Extend Discovery Deadline [DE #44].) In light of the court's ruling on

18

defendant's motion for summary judgment, the court concludes that plaintiff's motion is moot.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [DE #34] is GRANTED. Plaintiff's motion to amend his complaint [DE #49] is DENIED. Plaintiff's motion to extend the discovery deadline [DE #44] and all other pending motions are DISMISSED as moot. The clerk is directed to close this case.

This 26th day of November 2008.

MALCOLM J. HOWARD
Senior United States District Judge

At Greenville, NC
#31